### FENSTER v. BASS.

(Supreme Court, Appellate Term.  December 20, 1907.)

1. MASTER AND SERVANT—DISCHARGE OF SERVANT.
    Testimony of plaintiff that he told defendant's foreman that he felt bad and wanted to go home, and that the foreman said to him, "You don't need to come to-morrow; they are going to move," whereupon plaintiff left, and did not return to work, shows, not a discharge, but that plaintiff left voluntarily.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 49.]

2. SAME—WAGES—ABANDONMENT OF EMPLOYMENT.
    One employed at a certain amount per week, with a provision that from his wages $2 per week should be retained as a guaranty that he would not leave during the busy season, by leaving without the master's consent, in the middle of a week, and during the busy season, forfeits both the amount retained and his wages for the part of the week he worked.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 94–96.]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Joseph Fenster against Joseph Bass. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before GILDERSLEEVE, P. J., and McCALL and FORD, JJ.

Louis Boehm, for appellant.
Isidor Wels, for respondent.

FORD, J. Plaintiff (respondent) sued for breach of contract of employment, alleging that he was to receive $24 a week from September to Thanksgiving Day, 1906, and from that to May 15, 1907, $22 a week. He testified that at the end of November his employer, the defendant (appellant), arbitrarily reduced his wages to $15 a week, which were paid to him until the termination of the employment on Friday, January 19, 1907, except that under the new arrangement defendant deducted $2 weekly for seven weeks from his salary, and did not pay him for the 4½ days which he worked in the final week.

As to the circumstances of his leaving defendant's employment, he testified that on a Friday, at noon, he went to the foreman and told him that he (plaintiff) felt bad and wanted to go home, and that the

foreman said to him: "You don't need to come to-morrow; they are going to move." It appears that thereupon plaintiff left and did not return to work. Assuming that the foreman had the authority to discharge plaintiff, what is there in this conversation from which a discharge can be spelled out? Does it not rather show that plaintiff left voluntarily? The defendant testified that, in his business, the busy season ends December 1st, at which date the dull season commences and continues to January 15th, when the busy season starts up again. He says he hired plaintiff until December 1st only at $24 a week. At that date he had a talk with plaintiff, and agreed to keep him on during the slack season at $15 a week, but would pay him $22 a week after the busy season began on January 15th; furthermore, that the defendant was to keep back $2 a week of plaintiff's wages as a guaranty that he would not leave during the busy season. To this new arrangement, as he testified, plaintiff agreed, and worked under it until January 19, 1907, when he voluntarily left the employment without the knowledge or consent of the defendant.

The trial justice expressly found against the plaintiff on his version of the terms of the contract of employment, but gave judgment in his favor for $14, the amount of the moneys withheld by the defendant, and also for $14.50, wages for the 4½ days worked in the last week—a total of $28.50. Since the testimony shows that plaintiff was not discharged, but left without defendant's consent, he forfeited both the amount withheld and his wages for the 4½ days. 26 Cyc. 1042; Seaburn v. Zachmann, 99 App. Div. 218, 90 N. Y. Supp. 1005; Eden v. Silberberg, 89 App. Div. 259, 85 N. Y. Supp. 781. There is enough in the testimony to show that defendant was damaged by plaintiff's leaving when he did, just at the beginning of the busy season, after having earned $15 a week during the preceding slack season, during which, as defendant testified, plaintiff's services were not actually worth more than $3 or $4 a week.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.